IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LENORE BOISSIERE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-1144 (LMB/MSN) |
| | ) |
| RICHARD V. SPENCER, Secretary of the Navy, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is defendant Richard V. Spencer's ("defendant") Motion to Dismiss in Part [Dkt. No. 7] plaintiff Lenore Boissiere's ("Boissiere" or "plaintiff") Amended Complaint, in which she claims that she was illegally discriminated against on the basis of her race and national origin,[1] as well as in retaliation for engaging in protected activity, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. For the reasons that follow, defendant's Motion will be granted and plaintiff's hostile work environment and retaliation claims will be dismissed.

The Complaint alleges that in May 2010, Boissiere, who has been an employee of the United States Navy since 1988, was assigned to the Marine Corps Systems Command as a Program Manager Supervisory Project Team Lead, NH-0340-IV. Am. Compl. ¶ 5. In this role, Boissiere led a team of four employees who helped to acquire and sustain Information Technology systems and computing equipment used by the Marines. Id. ¶ 7. Her job description included

---

[1] Boissiere does not specifically identify her race in her Amended Complaint; however, she was born in Trinidad and is of East Indian and Venezuelan national origin. Am. Compl. [Dkt. No. 13] ¶ 4.

duties such as leading and mentoring her team, as well as distributing and balancing workload and tasks among the employees on the team. Id. ¶¶ 6-7.

In January 2013, Boissiere began to experience problems with various co-workers. For example, one "co-worker with a lower level on the organizational chart," Stacy DuPont ("DuPont"), "confronted [Boissiere] at her desk in an antagonistic manner"; "interrupted presentations" that Boissiere was making in two separate meetings, once suggesting "rudely" that "someone else provide the information" and once "strongly, and wrongly," urging people at the meeting to "reject[] a work proposal being presented" by Boissiere; and "responded negatively" when Boissiere went to her "desk for a work-related question." Id. ¶¶ 8-11. In addition, in February 2013, Boissiere went to the office of Kelly Young ("Young"), one of the members of the team that Boissiere managed, to have a work-related discussion and Young "closed the door in Ms. Boissiere's face telling her that 'this is how we keep unauthorized people out.'" Id. ¶ 19. Young also allegedly "focused on minor spellings [sic], punctuation and other typographical errors" rather than providing "a substantive review" when given some of Boissiere's written work to review, which focus Boissiere attributes to "an attempt to emphasize that English was Plaintiff's second language." Id. ¶¶ 33-34. In addition, Boissiere heard both Young and another team member, Malissa Burns ("Burns"), call Boissiere a "b----." Id. ¶¶ 23-24. Apparently in a separate incident, Burns was also moved to an office far away from Boissiere's office, which "interfered with Plaintiff's ability to manage" Burns. Id. ¶ 27. Around the same time, Burns "arrogantly refused to perform duties directly assigned to her by" Boissiere. Id. ¶ 28.

When Boissiere went to her supervisor, Lt. Col. Ross Monta ("Monta"), with concerns about these various co-workers, he did not provide answers that Boissiere liked. With respect to DuPont, Monta told Boissiere that "Du[P]ont had a much different version of their interaction" and

2

he "accepted Du[P]ont's version in full." Id. ¶¶ 12-13. With respect to Young, Monta "did nothing" to address Young's "inappropriate words and actions to a manager about a legitimate work-related inquiry." Id. ¶ 20. In addition, Monta told Boissiere that he communicated with Young almost daily and that Young had expressed concerns to him about Boissiere. Id. ¶ 21. All told, Boissiere alleges that she reported "the harassment and interference with her work" to Monta at least seven times. Id. ¶ 25.

In addition, Monta gave Boissiere negative feedback. For example, in February 2013, during Boissiere's mid-year performance evaluation, he told her that "she had a communication problem with her team, which was probably 'a cultural or language issue.'" Id. ¶ 14. According to Boissiere, "no one had ever complained about her accent" in her previous nine years of work for the Marines. Id. ¶ 15. Monta also told Bossiere that she "had a leadership issue which resulted in team members not getting along and team members wanting to leave the job because" of her. Id. ¶ 16. In May 2013, Monta again told Boissiere that she had a communication problem with her staff related to her language skills. Id. ¶ 26. In a "Salary Appraisal document for 2013," Monta "deducted one point from the Teamwork/Cooperation category" on Boissiere's evaluation, although he rated her as perfect in each of the other five categories in the document. Id. ¶¶ 39-40. Boissiere alleges that the one point deduction must have been related to the communication issue, which Monta had previously linked to her accent or cultural background. Id. ¶ 42.[2]

The Complaint further alleges a variety of assertedly hostile actions taken by other co-workers. For example, in 2013, a "Program Manager Team Leader", Carol Harvey ("Harvey"), told Boissiere "that she needs to learn how to read." Id. ¶ 29. In addition, Harvey and an unnamed

---

[2] The Complaint speculates that the "lower score negatively impacted job opportunities for Plaintiff as a Senior Project Manager NH-IV in the organization." Id. ¶ 43.

"Supervisory Contract Specialist from IT Projects" reassigned work from Boissiere to Young, even though Young was Boissiere's subordinate. Id. ¶ 30. Although Boissiere emailed Monta and other unnamed "higher level managers" to complain about the reassignment, she never received an answer. Id. ¶ 31. In addition, on "numerous other occasions," Monta, Young, Harvey, Burns, and John Williamson ("Williamson"), a "Lead Engineer," "spoke harshly and/or disrespectfully" to Boissiere. Id. ¶ 36. On one specific occasion, Williamson "threatened" Boissiere by "stating it was dangerous for her to comment about his Engineers while she was attempting to complete her assigned projects which involved them." Id. ¶ 37. Additionally, in an organizational chart produced in March 2014, Boissiere was listed as one of four managers on the same level, but in a listing of employees produced a few months later, Boissiere was the only one of the four not to be identified as a "supervisor." Id. ¶ 38.

In late 2013, Boissiere applied for the position of "Deputy Program Manager." Id. ¶ 45. Sometime in 2014, Boissiere learned that her application had been rejected, and Monta moved Boissiere from a "NH-0340-IV Program Manager (Project Team Leader) position into a less favorable position in a different job category (0343) with fewer career enhancing opportunities" because, according to Monta, not enough work existed to support her position. Id. ¶¶ 46-47. In addition, Monta "downgraded Plaintiff from her NH-IV position to a junior NH-III position with less work responsibilities and Monta assigned another Project Manager to the Plaintiff's old NH-IV position with an upgraded title of Team Leader." Id. ¶ 48.

Based on this conduct, Boissiere has brought three claims against defendant. Her first two claims allege "unlawful actions taken against Plaintiff, resulting in the creation of a hostile work environment and the change of Plaintiff's job classification" because of her national origin (Count 1) and race (Count 2), both in violation of Title VII. Her third claim alleges that the various adverse

employment actions were taken against her in retaliation for engaging in protected activity, also in violation of Title VII. Boissiere seeks a declaratory judgment, $300,000 in compensatory damages, reinstatement to Program Manager, NH-0340-IV (Team Leader), back wages and interest, and attorney's fees and costs. Defendant has filed a Motion to Dismiss in Part, arguing that the Court should dismiss Boissiere's hostile work environment and retaliation claims.[3]

Under Rule 12(b)(6), a civil action must be dismissed if the complaint does not "contain sufficient facts to state a claim that is 'plausible on its face.'" E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although the court must assume for the purposes of deciding the motion that all "well-pleaded allegations" are true and must "view the complaint in the light most favorable to the plaintiff," Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009), allegations that are merely conclusory need not be credited, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To make out her hostile work environment claim, Boissiere must show that she experienced unwelcome conduct based on her race or national origin that was "sufficiently severe or pervasive to alter [her] conditions of employment and to create an abusive work environment" and which is imputable to the employer. Guessous v. Fairview Property Investments, LLC, 828 F.3d 208, 221 (4th Cir. 2016) (internal quotation marks omitted). Defendant argues both that the actions described in the Complaint do not rise to the level of severe or pervasive conduct and that

---

[3] Defendant also argues that the Court should dismiss Boissiere's discrete act discrimination claims premised on the deduction in the performance evaluation and the reassignment of the task to her subordinate; however, Boissiere clarifies in her brief that there is "no separate claim" for either of these acts. Pl. Opp. [Dkt. No. 18] 10.

the Complaint does not plausibly allege that the conduct in question occurred based on Boissiere's race or national origin. Def. Mem. [Dkt. No. 8] 12.

Taking the second argument first, Title VII "prohibits an employment atmosphere that is permeated with discriminatory intimidation, ridicule, and insult," but it "does not establish a general civility code for the American workplace." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks omitted). Accordingly, "complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII." Id. at 315-16 (internal quotation marks, citations, and alterations omitted). Instead, the "sine qua non of a hostile work environment claim is the presence, in the workplace, of racially offensive remarks or other actions that are, in and of themselves, racially insulting." Qaiser v. Small Bus. Admin., No. 1:15-cv-1627, 2016 WL 8711622, at *10 (E.D. Va. Mar. 18, 2016) (internal quotation marks omitted).

Here, Boissiere has not met her burden of plausibly pleading that the allegedly abusive conduct was based on her race or national origin. Indeed, of the array of conduct about which Boissiere complains, only two examples are alleged to be tied to her race or national origin: the comments from Monta about her communication difficulties and relating those difficulties to her language or culture and Young's focus on Boissiere's spelling and grammar errors. The rest of the conduct about which Boissiere complains, much of which is related to individuals other than Young or Monta, has no plausible link to her race or national origin but instead appears to be "nothing more than rude treatment by coworkers." Boissiere filed the Amended Complaint after defendant filed his Motion to Dismiss in Part. As such, Boissiere was on notice of the need to allege a plausible link between her race or national origin and the disrespectful conduct, but her

Amended Complaint fails to include any such allegations. Accordingly, Boissiere has not plausibly pled that she was subjected to a hostile work environment on account of her race or national origin and these issues will be dismissed from Counts 1 and 2.

Turning to Count 3, the "elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). Protected activity includes such activity as "opposing discriminatory practices or participating in any manner in a Title VII investigation, proceeding, or hearing." Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 F. App'x 351, 354 (4th Cir. 2009). Defendant argues that plaintiff has failed to plead engagement in protected activity, to which plaintiff responds that she "engaged in protected activity when she repeatedly sought Monta's assistance on at least seven (7) different occasions." Pl. Opp. 10. That argument fails because even after having the chance to amend her Complaint, Boissiere has not plausibly pled that the bulk of the disrespectful behavior she brought to Monta's attention had any connection to her race or national origin, nor has she alleged that, in her communications with Monta, she identified this behavior as discriminatory rather than merely disrespectful. Accordingly, her communications with Monta do not constitute protected opposition to discriminatory practices and for this reason her retaliation claim, Count 3, will be dismissed.

For the reasons stated above, defendant's Motion to Dismiss in Part is GRANTED; and it is hereby

ORDERED that Count 3, as well as the hostile work environment claims in Counts 1 and 2,[4] be and are DISMISSED WITH PREJUDICE.[5]

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 26th day of April, 2018.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[4] In addition, defendant asks the Court to clarify which discrete act(s) form the basis of Counts 1 and 2. Plaintiff's Complaint discusses being denied a promotion and her later reassignment to a different position, both of which could constitute adverse employment actions, but her brief seems to identify the promotion as the sole source of her discrimination claim. See Pl. Opp. 10 ("Defendant believes that Plaintiff should identify which actions of Defendant are connected to which claim. He is correct regarding the denial of promotion as a separate claim from the hostile work environment claim."). Accordingly, plaintiff is directed to clarify which specific act(s) form the basis of her claims in Counts 1 and 2.

[5] The dismissal is with prejudice because plaintiff has already had a chance to correct the pleading deficiencies in her Complaint by having the benefit of defendant's Motion to Dismiss in Part. In response to that Motion, plaintiff filed the Amended Complaint at issue. As proof that plaintiff failed to address the defects in her original Complaint, defendant elected to proceed with his original Motion to Dismiss in Part rather than file a new motion in response to the Amended Complaint.

/s/

Leonie M. Brinkema
United States District Judge